CASE 57—PETITION EQUITY—DECEMBER 4.

# Briggs, Exeeutor v. Walker, Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. CONTRACTS—CLAIMS AGAINST THE GOVERNMENT.—Where one sold
   all of his cotton on certain plantations in consideration of cer-
   tain debts and liabilities incurred by the vendee, and the latter
   in consideration of such sale at the same time agreed with an-
   other of the vendor's creditors to pay his claim and that of a
   third creditor out of the proceeds of the cotton if the amount
   realized after the payment of expenses was sufficient therefor,
   and if not they were all three to share the same *pro rata;* and
   the cotton was subsequently confiscated and sold by the Fed-
   eral Government, and subsequently by an act of Congress the
   vendee's executor was authorized to go into the court of claims
   and determine his claim against the Government for the pro-
   ceeds of the sale provided it was found that the vendee had been
   loyal to the Government, and the court of claims was only au-
   thorized by the act to render judgment for the amount of the
   vendor's indebtedness if it should be found that the sale was
   intended merely as a security; and the executor did file in the
   court of claims his suit and recovered a large sum of money,
   the two creditors were not precluded from claiming under their
   agreement with the vendee their *pro rata* share of the amounts
   so adjudged because the allowance was only made on condition
   of the vendee's loyalty, or because only the amount of the ven-
   dor's indebtedness to the vendee was allowed, or because they
   testified in the court of claims that the sale was absolute and
   in good faith, or because the claim was barred by the statute of
   limitations, which was waived by the Government only for the
   benefit of the vendee's estate.
2. ATTORNEY'S FEES.—The vendee's executor was not entitled to the
   payment of attorney's fees out of this fund before its distri-
   bution, there being a sufficient estate left in his hands for that
   purpose.
3. INTEREST.—The executor was not properly chargeable with inter-
   est on this fund, it not appearing that he used the same or made
   it profitable, or that he could have done so safely in view of
   the litigation.

GIBSON & MARSHALL FOR APPELLANT.

1. The act of Congress, under which the money was recovered, was entitled "an act for the relief of the estate of C. M. Briggs, deceased," and not for the relief of Walker or Shotwell or any one else; the claim was barred by limitation long before the passage of that act, and the loyalty of the claimant was required to be established before the claim could be considered by the court of claims.    If it had been suspected that there were any other beneficiaries under that act it would have certainly been required that their loyalty should have been shown.

2. The act of Congress required it to be established that the assignment from Morehead to Griggs was *bona fide* and for the consideration expressed in it, and in the event, it was found to be merely an assignment as security to Briggs for indebtedness, the recovery was to be limited to such portion of the proceeds of the cotton as would satisfy the debts and claims of Briggs; it is manifest throughout the act that there was a suspicion that perhaps some one other than Briggs was to be benefitted, and that was expressly guarded against.

3. The conduct of Walker and Shotwell was inconsistent with their present demands, and of such fraudulent character that those claiming under them are estopped to assert any claim.    Lindley on Partnership, sec. 119.

HELM & BRUCE for A. M. WALKER.

1. The mere denial of consideration for a written instrument does not cast the burden of proof upon the plaintiff; and where the writing itself expressed a consideration upon the face of it, parol testimony to contradict it is not competent.  School v. Fleming, 10 Bush, 238; Boone v. Shackleford, 4 Bibb, 69; Mills v. Rouse, 2 Littell, 206; Thomson v. Buchanan, 2 J. J. M., 420.  Rau v. Boyle, 5 Bush, 262.

2. The money which was paid to Briggs was paid by the Government as the proceeds of the sale of this identical cotton to which Briggs had no claim except under the bill of sale from Morehead, and when he received that money he was bound under his contract with Walker to pay him and Shotwell their part thereof.

3. The court properly refused to allow the executor commission on the whole $88,000, adjudged to him, it being shown that his counsel's fees were contingent and that they received one-half of the sum under a contract.  McNulty v. DeSausure, 19 S. E. Rep., 946.

4. The executor should have been charged interest on the sum in his hands.  Ky. Statute, sec. 3859; Williams on Executors, vol. 3, page 1948; Dunscobe v. Dunscombe, 1st Johnson's Chancery, 510; Fox v. Wilcox, 1 Binney (Pa.), 196; Riley v. McInlear, 61

Vt., 254 (17 Am. Rep., 733); Griggs' Executor v. Wilkerson, 9 Bush, 95.

CHARLES M. WALKER OF COUNSEL FOR SAME PARTY.

W. B. DIXON AND S. B. & R. D. VANCE OF COUNSEL FOR APPELLEES.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellant, James A. Briggs, as executor of C. M. Briggs, filed his amended and supplemental answer and cross-petition in the suit of McLemore, Guardian v. Briggs, Executor, pending for the settlement of his intestate's estate in the Jefferson Circuit Court, chancery division, in which he averred that since the last settlement of his accounts he had succeeded in collecting from the United States Government the "cotton claim" referred to in previous settlements; and that Amanda M. Walker, and the Ohio Valley Banking and Trust Company as administrator of the estate of A. L. Shotwell, deceased, were asserting some sort of claim against the money so collected by him; and he asked that in order to a final settlement of his accounts those parties be required to set up whatever claims they had.

Accordingly, the parties named, being the present appellees, did appear and assert their claims, and after a trial of the issues involved, judgment was rendered, distributing the sum collected; namely, $44,000, among three parties, viz.: James A. Briggs, as executor of C. M. Briggs, Amanda M. Walker, as assignee of her husband, and the Banking and Trust Company, as administrator of Shotwell; the shares of each being fixed according to the terms of a writing to be noticed presently. That Walker and the company should have been allowed any part of this cotton claim is the subject matter of Brigg's complaint in this appeal.

It appears that on April 18. 1862, C. S. Morehead executed and delivered to his nephew, C. M. Briggs, the following writing: "For and in consideration of money loaned and advanced heretofore by C. M. Briggs, and further valuable consideration by way of suretyship for me by said Briggs, I hereby sell and transfer to said C. M. Briggs all the cotton on my two plantations in Mississippi, near Eggs Point and Greenville. Said cotton embraces all that I have—baled and unbaled, gathered and ungathered. This is intended to cover all cotton that I have now, or may have this year on said two plantations, supposed to be about 2,000 bales.

"April 18, 1862.         C. S. MOREHEAD."

At the same time, C. M. Briggs executed and delivered to Samuel J. Walker, who was the son-in-law of Governor Morehead, the following writing:

"In consideration of the sale and transfer this day made to me by C. S. Morehead of all the cotton on his two plantations near Eggs Point in the State of Mississippi, as specified in said sale and transfer, in writing, I hereby assume and agree to pay to Samuel J. Walker the sum of forty thousand dollars, due and owing to said Walker by said C. S. Morehead, upon condition, however, that I realize sufficient amount from any cotton on or from said plantations or proceeds of same, together with about twenty-five thousand dollars due me from said C. S. Morehead for moneys advanced and liability for him as surety; also about ten thousand dollars, more or less, being a claim of A. S. Shotwell as he may hereafter establish against said C. S. Morehead; but in case I should not realize sufficient to pay all of said claims or amounts above named in full, then I am to pay

·or divide the amount that may be realized from said cotton proportionately or *pro rata* according to the respective amounts named to the parties above named; first, however, paying and refunding any moneys paid by the respective parties for or account of expenses pertaining to same, :and in case more should be realized than sufficient to pay said amounts, with interest thereon to the time of realization and payment, then any surplus to be divided, one-half to said Shotwell and (C. M. Briggs jointly) 'for any services, and the remaining one-half to said Samuel J. Walker, but no other consideration to be paid to said Shotwell and Briggs for their service.                C. M. BRIGGS.

"April 18, 1862."

Briggs at once took steps to get possession of the cotton, ·but by reason of the operations of the Federal and Confederate forces in its vicinity, was unsuccessful. The cotton, was finally seized by the Federal authorities, who sold it and the money was paid into the Treasury of the United States.

C. M. Briggs died in 1875, after unsuccessful and repeated ·efforts to obtain the money for which his cotton sold. Thereafter his executor undertook the task, and finally, in June, 1888, through his attorneys, obtained the passage of the following act of Congress:

"Be it enacted, etc., That the Court of Claims is hereby given, subject to the proviso hereinafter mentioned, like' jurisdiction to hear and determine the claim of the legal representatives of C. M. Briggs, deceased, for the proceeds of four hundred and fifty-five bales of cotton, now · in the Treasury of the United States, alleged to have been

owned, in whole or part, by said Briggs, as is given to said court by the acts of March twelfth, eighteen hundred and sixty-three and July second, eighteen hundred and sixty-four, upon petition to be filed in said court at any time within two years from the passage of this act, any statute of limitations to the contrary notwithstanding;

"Provided, however, That unless the said court shall, on a preliminary inquiry, find that said Briggs was in fact loyal to the United States government, and that the assignment to him hereinafter mentioned was *bona fide*, the court shall not have jurisdiction of the case, and the same shall, without further proceedingss, be dismissed;

"And provided further, That if the court shall find that the alleged assignment from one Morehead to said Briggs, of date April eighteenth, eighteen hundred and sixty-two, under which said Briggs claimed said cotton, was intended only as security to said Briggs for indebtedness, and against contingent liabilities assumed by him for said Morehead, judgment shall be rendered for such portions of the proceeds of said cotton as will satisfy the debts and claims of said Briggs, to secure which said assignment was given;

"Provided, Said judgment shall not be paid out of the general fund in the Treasury arising from the sale of captured and abandoned property, but shall be paid out of the special fund charged to and accounted for by Captain G. L. Fort, assistant quartermaster at Memphis, arising from the sale of the two thousand two hundred and nine bales of cotton received by him, with which claimant's cotton was intermingled, said claimant to receive only the

proportion which his cotton bears to the net proceeds accounted for by said Fort. (June 4, 1888, Ch., 348, Stat. L., 1075).

Under the provisions of this act, the executor filed his petition in the Court of Claims, where after an investigation he was allowed the sum of eighty-eight thousand dollars ($88,000); to one-half of which, however, the attorneys for the claim were entitled, in pursuance of their contract with C. M. Briggs. Thus there came to his hand, in March, 1894, the sum of $44,000, as the proceeds of the cotton sold to him in the contract of April 18, 1862, and to the distribution of which in the particular manner therein pointed out he stood pledged in his contract of the same date.

The appellees base their claims to a *pro rata* share of this $44,000 on the writing signed by Briggs. No question is raised as to Amanda M. Walker's ownership of the claim in favor of Samuel J. Walker, whose widow she is; and there is no serious dispute as to the amount of the Shotwell debt.

At the inception of the litigation over these claims, the executor contented himself with a general denial from want of knowledge or information of the averments of the pleadings of the appellees, but after some preparation of the case he filed an amended pleading and rested his defense on certain facts connected with the prosecution of the claim in the Court of Claims which he contended estopped the appellees from asserting their demands, and established that C. M. Briggs alone, or his estate, was entitled to the entire sum collected. This pleading was filed over the objections of the appellees, but upon final hearing their de-

murrers thereto were sustained and the sufficiency of the pleading is the question to be determined.

The averments, briefly stated, are that the passage of the act in virtue of which recovery was made possible was a pure matter of grace on the part of the Government for the sole benefit of C. M. Briggs' estate; that the claim had long before been barred by limitation and was in fact worthless except for this act of grace. That in the action in the Court of Claims, it was finally determined that C. M. Briggs was loyal to the United States, and for this reason, amount of recovery was limited to such sum as would satisfy the debts and claims alone of C. M. Briggs against Morehead, and no recovery was or could have been allowed on anything owing Walker or Shotwell by Morehead. And, moreover, that the most important and material evidence he could procure in the prosecution of the claim in that court was furnished by Walker and Shotwell, who testified that the sale of the cotton by Morehead to Briggs was absolute and in good faith, on account of Morehead's indebtedness to Briggs, existing prior to the sale, and for nothing else. That the interest of Walker and Shotwell in the claim, if they intended to assert any, was fraudulently suppressed and concealed by them, and this was a fraud on the Government. He files as part of his pleading, copies of certain depositions of Shotwell, taken before the Court of Claims, and likewise a copy of Walker's affidavit. He also called in question the execution of the paper of April 18, 1862, purporting to have been signed by Briggs, and denied its genuineness. This, however, he afterwards retracts, and no attention need be paid to this feature of his defense.

The affidavit of Walker in the Court of Claims is to the effect that he was the son-in-law of ex-Governor Morehead, and was intimate with him since 1857 until his death, in 1868; he was his counsellor, adviser and friend. That he frequently heard Morehead talk of his indebtedness to C. M. Briggs, prior to 1862, and in all his conversations on this subject he said he was indebted to Briggs largely for moneys advanced and liabilities as surety for him; and that in April, 1862, a bill of sale was written by the affiant of all of Morehead's cotton on his two cotton plantations in Washington county, Mississippi, which was done as evidence of a *bona fide* sale and transfer to said Briggs of the same and for the purposes specified in said writing. That the said transfer of the cotton as specified in the writing was absolute and *bona fide* on account of said liabilities and indebtedness existing prior to the date of said bill of sale.

Shotwell's statements were to the same effect, but he testified further that he did have an interest of one-third in the claim under a contract with Briggs, and that the sale was for the purposes in the writing and for nothing else.

These statements were all true except, perhaps, the last one of Shotwell, and as it is not shown certainly that Shotwell knew of the writing which had been delivered to Walker, he may not have told an untruth intentionally. But in any event it was wholly immaterial and did not deceive or defraud the Government.

It is averred in the appellants' pleadings that no allowance was made to Briggs and "he only received and recovered from the United States such sum as was owing directly to his testator by said Morehead." Here it is confessed that

nothing was recovered from the United States except what was justly owing from Morehead to Briggs. And this amount the Government was willing to pay because of the known loyalty of the claimant, Briggs. But surely the Government did not seek to impress on the sum it was willing to pay Briggs, on a debt justly due him, an exemption from Brigg's obligations? Walker and Shotwell had no claim on the Government and presented none. They helped Briggs get only what was due him, and how could the Government be interested in preventing Briggs' discharge of his honest obligations after he got his money? There is nothing to show that either Shotwell or Walker were disloyal and even if they were, the policy of the Government has never been so far extended as to refuse to pay its loyal subjects only on condition that they do not pay out the money to those who may have been disloyal. But while appellant's pleading avers as a fact that suppression and concealment of the facts were resorted to by these affiants in the Court of Claims the deposition of Shotwell, made part of the pleading, discloses that he testified in that court that because of Morehead's indebtedness to him on bank paper and securities, he was to have one-third of this claim, and that C. M. Briggs had told him "that the bill of sale for the cotton was given to said Briggs by Morehead for the purpose of paying Briggs, S. J. Walker and himself for such sums or notes by virtue of endorsements." So it would seem that no concealment of facts was made, and the Court of Claims did not refuse to allow Briggs the amount of his debt on Morehead out of the proceeds of the cotton sold by the Government by reason of the fact that the sale by Morehead

was for the purpose of securing other parties than Briggs, though it may have confined its allowance to what Morehead owed Briggs alone.

The obligation of Briggs, however, was to *pro rata* whatever sum he might get out of the cotton, and with this obligation, the Government, as we have seen, was not concerned.

We attach no importance to the suggestion that the Government saw fit to waive the plea of limitation. Individuals do this sometimes and there was strong reason why the Government should do so in this case; for it is manifest there was no delay on the part of the claimant in presenting and urging his claim. The allowance to Briggs was certainly not a gratuity. The claim was to be established by proof and determined in a court and was to be paid not out of the general funds in the Treasury arising from the sale of captured and abandoned property, but out of the sales of cotton by Captain Fort, with which the claimant's cotton became intermingled and then only in the proportion which his cotton bore to the net proceeds of the Fort sales.

The judgment below allows the executor $2,200 as his commission on the amount collected, and adjudges the appellees entitled to recover such proportion respectively of the sum of $41,800 as their respective demands against the estate, namely $40,000, and $6,681 (amount fixed for Shotwell debt) bear to the aggregate of the three sums of $25,000, $40,000 and $6,681.

It is urged for appellant that he is entitled to counsel fees, to be deducted before distribution of this fund, and so

he would be, if there was not sufficient estate left in his hands out of which to pay them. But appellees can not be compelled to pay for services rendered against them when sufficient estate is left in the executor's hands for that purpose.

On the cross appeal it is suggested that the executor should account for interest on the fund collected in March, 1894, until the rendition of the judgment in July, 1895. We think not, because it does not appear that he used the funds or made it profitable, or that he could have done so safely in view of the litigation.

The judgment on the original and cross appeal is affirmed.